## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ANGEL MANUEL TORRES**,
    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL
SECURITY**,
    Defendant.

Civil No. 20-1275 (BJM)

### OPINION & ORDER

Angel Manuel Torres ("Torres") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that he is not entitled to benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Torres contends that the administrative law judge ("ALJ") wrongly concluded that (1) Torres's impairments did not meet the level of a "Listed" impairment; (2) he has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with some non-exertional limitations; and (3) he could perform the alternative jobs listed by a vocational expert. Docket Nos. ("Dkts.") 1, 27. The Commissioner opposed, Dkts. 24, 32.  This case is before me by consent of the parties. Dkts. 7, 8. For the reasons set forth below, the Commissioner's decision is **VACATED** and **REMANDED**.

### APPLICABLE LEGAL STANDARDS

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are

not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the

Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1 (the "Listings"), which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, through which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz*, 890 F.2d at 524. Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

# BACKGROUND

## A. Medical History

### *Treating Sources*

### First Hospital Panamericano

Torres was hospitalized from September 20 to October 1, 1999. Tr. 652. He arrived presenting grandiose deliriums, hallucinations, uneasiness, insomnia, sadness and crying. *Id.* Upon his release, he was diagnosed with bipolar disorder. *Id.* Further, he was coherent with appropriate affect, had an improved mood, denied suicidal and homicidal thoughts, and did not appear to have perceptual or thought disorders. *Id.* The treating therapist recommended that Torres structure his spare time, participate in depression support groups, simplify his daily routine, find ways to manage stress effectively, and find activities that he enjoys and that improve his self-esteem and mood. Tr. 143. At a follow-up appointment, Torres was found to have delusional thoughts, sadness, tearfulness, and insomnia. Tr. 145. He also was alert, had poor visual contact, demonstrated restricted psychomotor activity, and articulated coherent and logical thoughts. Tr. 149–50. At a subsequent appointment on October 18, Torres stated that he felt sedated and sad, and that he continued to hear voices. Tr. 153. He was crying, had poor visual contact, and had a sad and restricted affect. Tr. 154. The treating psychiatrist gave him a GAF score of 55. Tr. 667.

### Hospital Pavia Hato Rey

Torres was next hospitalized from September 14 to September 16, 2005. Tr. 171, 679. At that time, a psychiatrist, Dr. Diogenes O. Adames, wrote a note apparently directed to Torres's supervisor stating that he needed to be transferred to a less stressful work environment. Tr. 168, 680. Upon Torres's release, Dr. Gustavo Rivera Cruz diagnosed Torres with bipolar disorder mixed type with psychotic features and gave him a GAF score of 60. Tr. 676. Dr. Rivera Cruz

*Angel Manuel Torres v. Commissioner of Social Security,* Civil No. 20-1275 (BJM)                    5

further noted that Torres was groomed and cooperative, denied suicidal or homicidal thoughts, denied hallucinations or deliriums, and was adequately oriented in space, time, and place. Tr. 165.

**Dr. Jaime Marchena Arraut (Psychiatrist)**

Dr. Marchena Arraut evaluated Torres from December 2015 to December 2016. Tr. 189–214, 703–28. During that time, Torres appeared oriented in time, place, and space; had a preserved memory and normal recent and remote memory; was cooperative, but at times evasive; was distractable and could only concentrate briefly; and had a normal appearance. Tr. 704, 713–14, 718–20, 724.

**Dr. Roberto Irizarry Rivera (Psychologist and Consultative Examiner)**

On October 26, 2016, Dr. Irizarry Rivera conducted a consultative examination. Tr. 688–695. He found Torres to be adequately dressed with a clean appearance. Tr. 691. Further, Torres's speech was mostly relevant, he spoke in a normal tone of voice, established a good rapport, and answered all questions. Tr. 691. Additionally, his thoughts were coherent, relevant, and logical. *Id.* Torres had no suicidal thoughts, but did have homicidal ideas, delusions, phobias, and "ideas of reference that were not present at the time of the interview." *Id.* Further, he had a depressed mood with no eye contact, low psychomotor activity, and his affect was consistent with that mood. *Id.* Dr. Irizarry Rivera also found Torres was oriented in place, person, and circumstance, but not time. Tr. 692. Additionally, he could maintain prolonged attention during the interview. *Id.* Further, Torres could distinguish between socially acceptable and unacceptable behavior and his insight was adequate. Tr. 693. Ultimately, Dr. Irizarry Rivera diagnosed Torres with a major depressive disorder featuring recurrent, moderate symptoms and no psychotic features as well as schizoaffective disorder, bipolar type. *Id.* He gave Torres a GAF score of 57. *Id.* However, his prognosis was guarded because he did not have enough information. *Id.*

**Hospital San Juan Capistrano**

Torres was hospitalized again in June 2016; this time with suicidal thoughts, anxiety, thought acceleration, hallucinations, and persecutorial thoughts. Tr. 804–10. The hospitalization report found that upon leaving he was alert, cooperative, well-integrated into group therapy. Tr. 804. Further, it stated he had achieved the maximum benefit of hospitalization and could continue treatment in a less restrictive environment. *Id.*

**Dr. Luis Gonzalez (Psychiatrist)**

Dr. Luis Gonzalez treated Torres from June 2017 to April 2018. Tr. 265–74. During that time, Torres appeared groomed, alert, and cooperative. Tr. 267, 269, 271, 273. Additionally, he presented logical, coherent, relevant, and oriented thoughts. *Id.* He had adequate affect, insight, judgment, and appetite and did not present a suicide or homicide risk. *Id.* He did however appear depressed and anxious throughout this period. *Id.*

**Dr. Caroline Toro (INSPIRA)**

Dr. Toro treated Torres twice in August 2018. Tr. 275–87. On August 3, she diagnosed Torres with schizoaffective disorder, bipolar type and found him to have intermediate memory, adequate thought content, relevant, coherent, and logical thought processes, and adequate insight. Tr. 281, 800. At a follow-up appointment on August 31 Torres had good hygiene, behaved adequately, and articulated relevant, coherent, and logical thoughts. Tr. 275. Further, Torres was oriented to person time and place, had intermediate memory, spoke clearly, and showed adequate judgment. *Id.* However, Dr. Toro found Torres had a dulled affect which corresponded with his complaint that he felt sedated. Tr. 275.

**Dr. Manuel Areces Pernas (Cardiologist)**

Dr. Areces Pernas, a cardiologist, documented Torres's cardiac health and also submitted test results. Tr. 577–625, 729–78. The parts of the record that are legible shed no light on Torres's mental state. *Id.*

**Dr. Felix F. Rios Gonzalez (Cardiologist)**

Dr. Rios Gonzalez is a cardiologist and, save for one statement on his August 30, 2018 progress notes that Torres appeared "well-nourished and well-developed," his notes shed no light on Torres's mental state. Tr. 811–20.

### B.  Procedural History

Torres filed an application for disability benefits on September 7, 2016 alleging disability beginning on June 4 of that year. Tr. 467. On November 20, 2018, Torres appeared at a hearing before an ALJ. Tr. 38. He testified that he had completed high school and three years of an electrician trade school program, but never used this training on the job. Tr. 43–44. Additionally, he stated that he cannot communicate in English. Tr. 44. Torres averred that he previously worked in multiple cafes, but stopped in June 2016 when he was hospitalized for depression after he broke down crying at work. Tr. 44–49. Torres then stated that he could no longer work due to his mental illness. Tr. 50. However, he also stated that he had not looked for work because he was caring for his mom. Tr. 57–58. Torres's attorney asserted that Torres had difficulty explaining himself. Tr. 58.

A Vocational Expert ("VE"), Alina Salas, also testified. She stated that Torres could not work in jobs requiring interaction with the public due to his language ability. Tr. 70. The ALJ asked the VE to consider that Torres was 58 years old, had a high school education and three years of vocational training as an electrician, was a monolingual Spanish speaker, and had no exertional limitations. Tr. 69. Additionally, the ALJ told the VE that Torres had the following mental

*Angel Manuel Torres v. Commissioner of Social Security,* Civil No. 20-1275 (BJM)          8

limitations: he can perform simple, routine tasks but not at production rate pace (e.g. assembly line work); his use of judgment and his ability to adapt to changes in the work setting are limited to simple work-related decisions; and he can interact with supervisors frequently, coworkers occasionally, and never with the public. Tr. 69–70. The VE concluded that Torres could not perform any of his prior jobs based on these limitations, but that he could work as a Linen Room Attendant, Warehouse Worker, Chainsaw Operator, Laborer-Brush Cleaning, or Process Helper. Tr. 70–72. Torres's attorney then proposed more stringent hypothetical limitations than those adopted by the ALJ and the VE stated that a person with such limitations could not perform any job in the national economy. Tr. 72–73.

The ALJ announced her decision on February 4, 2019. Tr. 15–35. The ALJ found that Torres had not engaged in substantial gainful activity since the alleged onset date, and that he had the severe impairments of schizoaffective disorder, bipolar type, and major depressive disorder. Tr. 24.

Proceeding to Step Three, the ALJ found that Torres did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.* In support of this determination, the ALJ noted that she had considered Listings 12.03 and 12.04, but that Torres's conditions did not satisfy the required criteria. Tr. 24–25. The ALJ found that Torres did not satisfy the Paragraph B criteria. *Id.* The ALJ did not reference Paragraph A criteria at all. Though the ALJ found that the Paragraph C criteria were not satisfied, she did not explain this conclusion. Tr. 25.

Regarding the four functional areas under Paragraph B, the ALJ found that Torres had moderate limitations when it came to understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. *Id.* As for adapting and managing oneself, the ALJ determined that Torres had mild limitations Tr. 25. The ALJ observed that, during medical appointments, Torres followed instructions, complied with treatments,

concentrated, and paid attention effectively. Tr. 24. Further, he was cooperative and well-behaved and showed no difficulties with memory, attention, and concentration. Tr 24–25. However, the ALJ noted that Torres did not drive a car, perform household chores, or manage his bank accounts. Tr. 24. Additionally, he showed some difficulty with memories. Tr. 25. Though Torres reported that he did not interact with others and that he had difficulty getting along with neighbors and family members, the ALJ found the treatment notes and consultative reports did not corroborate any difficulty getting along with others. Tr. 24. Additionally, the ALJ noted the medical records showed Torres always appeared properly dressed and did not struggle with emotions or have difficulty with self-control. Tr. 25.

The ALJ the proceeded to Step 4. In determining Torres's RFC, the ALJ noted that Torres suffered from schizoaffective disorder, bipolar type, and a major depressive disorder. Tr. 26. The ALJ found that, consistent with those diagnoses, Torres was hospitalized due to suicidal ideation with planning, anxiety, hallucinations, and paranoid thinking. Tr. 26. However, the ALJ found that Torres responded well to treatment, was discharged in stable condition, and that he had remained stable ever since. Tr. 26–27. The ALJ noted that medical reports corroborated Torres's symptoms of manic episodes, sleeping problems, sadness, anhedonia, nervousness, and problems thinking. *Id.* However, the ALJ found these symptoms had generally been reported as moderate. *Id.*

The ALJ cited Torres's GAF ratings (which she said had been 60 or above) and accorded them great weight. Tr. 27. The ALJ also gave significant weight to Dr. Irizarry Rivera's findings that Torres had a major depressive disorder, recurrent, moderate without psychotic features and a GAF score of 57 because it was consistent with a mild to moderate mental disorder where someone retains the ability to perform simple tasks, partake in limited social interaction, and concentrate and remain at tasks. *Id.*

Likewise, the ALJ gave significant weight to the opinions of the State mental consultants, Dr. Hector Roman Rivera  and Dr. Janice Calderon, that Torres could "perform a two-step simple command, persist at tasks for two hour intervals, interact with others, and adjust to changes." *Id.* The ALJ determined these assessments were consistent with the medical record because they corroborated a mild to moderate mental disorder that did not completely render Torres unable to work. *Id.*

> To conclude her Step Four analysis, the ALJ found that Torres had the following RFC:
>
> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: is able to perform simple, routine tasks but not at production rate pace (e.g. assembly line work). His use of judgment is limited to simple work related decisions. He can interact with supervisors frequently, coworkers occasionally and never with the public. He can tolerate occasional changes in the work setting.

Tr. 25. Thus, she determined Torres could no longer perform his past relevant jobs as a counter attendant, cashier, or kitchen helper. Tr. 28–29.

At Step Five the ALJ found Torres, then 58 years old, was of advanced age and unable to communicate in English. *Id.* Torres testified that he had completed high school and three years of an electrician trade school program, but never used this training on the job. Tr. 43–44. The ALJ found that Torres worked in cafeterias for 15 years. Tr. 28. Because Torres's previous work was unskilled, the ALJ determined that transferability of skills was not an issue. Tr. 29.

The ALJ asked the VE to consider what jobs Torres could perform given his age, education, language ability, physical capabilities, and the mental limitations outlined in the RFC. Tr. 69–70. The VE concluded that Torres could not perform any of his prior jobs based on his limitations, but that he could work as a Linen Room Attendant, Warehouse Worker, Chainsaw Operator, Laborer-Brush Cleaning, or Process Helper. Tr. 70–72. Torres's attorney then proposed more stringent hypothetical limitations and the VE stated that a person with such limitations could not perform any job in the national economy. Tr. 72–73. However, the ALJ ultimately adopted the limitations outlined in Step 4 and concluded that Torres was not disabled under the Act. Tr. 29.

The Appeals Council denied review, Tr. 1, and this action followed.

## DISCUSSION

Torres challenges the ALJ's determinations at Steps Three, Four, and Five. Dkts. 1, 27. First, Torres argues that the ALJ's finding that he did not meet a listed impairment was not supported by substantial evidence. Dkt. 1 at 2. Second, he argues that the ALJ's finding regarding his RFC was unsupported by substantial evidence. Dkt. 1 at 3. Lastly, he asserts the ALJ erroneously concluded he could perform the jobs listed by the VE that were similar in exertional limitations to his past relevant work, which the ALJ found Torres was unable to perform. Dkt. 1 at 5. I will address each argument in turn.

### *Step Three*

Torres asserts that the ALJ erred in finding his impairments did not equal the severity of a listed impairment because evidence of his schizo-affecting disorder, bipolar type disorder, and major depressive disorder resulted in two marked limitations in the Paragraph B areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. Dkt. 1 at 2. As evidence, he argues progress notes and medical reports from treating and consultative sources corroborate the following signs and symptoms: manic episodes, sleeping problems, sadness, anhedonia, nervousness, and problems thinking. Dkt. 1 at 2. These, he asserts, are marked limitations on a sustained basis that hamper his ability to perform in a productive job. Dkt. 1 at 2. The Commissioner erroneously contends that Torres only disputes the ALJ's analysis at Step Five and thus does not address Torres's Step-Three argument. Dkt. 32 at 6.

To meet a listing, an impairment must meet all the medical criteria of the listing; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). The ALJ evaluated Torres's conditions against

Listings 12.03 and 12.04.[1] Tr. 24. To meet or equal Listing 12.03, which governs schizophrenia spectrum and other psychotic disorders, a claimant must satisfy the criteria in 12.03(A) & (B), or 12.03 (A) & (C). 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.03. Likewise, to meet or equal Listing 12.04, which governs depressive, bipolar, and related disorders, a claimant must satisfy the criteria in 12.04(A) & (B), or 12.04 (A) & (C). 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.04.  Torres has explicitly challenged only the ALJ's decision as it relates to Paragraph B, which is identical in both listings.[2] However, his argument also implicitly challenges the ALJ's findings regarding paragraph C of each listing. I will address each in turn.

To satisfy the Paragraph B criteria, a claimant's disorder must result in an extreme limitation of one area, or marked restrictions in two of the following areas:

1. Understanding, remembering, or applying information;

2. Interacting with others;

3. Concentrating, persisting, or maintaining pace; and/or

4. Adapting or managing oneself.

20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.03, 12.04. A claimant has a "moderate limitation" if his functioning in an area is "fair." *Id.* at 12.00. "Marked limitation" means a claimant's functioning is "seriously limited." *Id.* And "extreme limitation" means a claimant cannot function in an area "on a sustained basis." *Id.*

The ALJ determined Torres had moderate limitations with respect to understanding, remembering, and applying information; interacting with others; and concentrating, persisting, and maintaining pace. Tr. 24. Regarding the ability to adapt or manage oneself, the ALJ found that

---

[1] The Commissioner revised Listing 12.04 in 2016, and these revisions became effective on January 17, 2017 for any pending claims. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66139 (Sept. 26, 2016). Therefore, the revised listings applied when the ALJ issued her decision on February 4, 2019.
[2] The ALJ makes no findings regarding Paragraph A of 12.03 or 12.04. I assume she found that Torres's mental impairment met the requirements of those subparts.

Torres to have only a mild limitation. Tr. 24.  In support of her determination, the ALJ cited records

from Dr. Areces Pernas, Dr. Rios Gonzalez, Dr. Irizarry Rivera, Dr. Marchena Arraut, and Dr.

Gonzalez. Tr. 24. *See Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st

Cir. 1987) (explaining that a judge may "piece together the relevant medical facts from the findings

and opinions of multiple physicians").

Dr. Areces Pernas, a cardiologist, documented Torres's cardiac health and also submitted

test results. Tr. 577–625, 729–78. The parts of the record that are legible shed no light on Torres's

mental state. *Id.* Thus, it is not clear how Dr. Areces Pernas's opinions support the ALJ's

conclusions regarding Paragraph B.

Likewise, Dr. Rios Gonzalez is a cardiologist and, save for one statement on his August

30, 2018 progress notes that Torres appeared "well-nourished and well-developed," his notes shed

no light on Torres's satisfaction of the Paragraph B criteria. Tr. 811–20. Dr. Rios Gonzalez's notes

thus provide skeletal support to the ALJ's conclusion regarding Paragraph B, but nothing more.

Dr. Irizarry Rivera, a psychologist, conducted a consultative examination report that more

thoroughly addressed the Paragraph B criteria. Tr. 688–695. He found Torres to be adequately

dressed with a clean appearance. Tr. 691. Further, Torres's speech was mostly relevant, he spoke

in a normal tone of voice, he established a good rapport, and he answered all questions. *Id.*

Additionally, his thoughts were coherent, relevant, and logical. Torres had no suicidal thoughts,

but did have homicidal ideas, delusions, phobias, and "ideas of reference that were not present at

the time of the interview." *Id.* Further, he had a depressed mood with no eye contact, low

psychomotor activity and his affect was consistent with that mood. *Id.* Dr. Irizarry Rivera also

found Torres was oriented in place, person, and circumstance, but not time. Tr. 692. Additionally,

he could maintain prolonged attention during the interview. *Id.* Further, Torres could distinguish

between socially acceptable and unacceptable behavior and his insight was adequate. Tr. 693. Ultimately, Dr. Irizarry Rivera diagnosed Torres with a major depressive disorder featuring recurrent, moderate symptoms and no psychotic features and schizoaffective disorder, bipolar type. *Id.* He gave Torres a GAF score of 57. *Id.* However, his prognosis was guarded because he did not have enough information about Torres's previous hospitalizations. *Id.* Dr. Irizarry Rivera's opinion thus supports the ALJ's finding that Torres had moderate limitations regarding the first three Paragraph B criteria and mild limitation regarding his ability to adapt or manage himself.

Dr. Marchena Arraut evaluated Torres from December 2015 to December 2016. Tr. 189–214, 703–28. Throughout that period, Torres appeared oriented in time, place, and space; had a preserved memory and normal recent and remote memory; was cooperative, but at times evasive; was distractable and could only concentrate briefly; and had a normal appearance. Tr. 704, 713–14, 718–20, 724. Dr. Marchena Arraut's opinions thus support the ALJ's findings with respect to Paragraph B.

Within Dr. Marchena Arraut's notes, there is a discharge form from Torres's 2016 hospitalization. Tr. 706. Though Torres was hospitalized with suicidal thoughts, anxiety, thought acceleration, hallucinations, and persecutorial thoughts in June 2016, the hospitalization report found that upon leaving he was alert, cooperative, well-integrated into group therapy. *Id.* Further, it stated he had achieved the maximum benefit of hospitalization and could continue treatment in a less restrictive environment. *Id.* The need for hospitalization seemingly supports greater limitations than the ones the ALJ ultimately adopted. However, in light of the other record evidence, including Dr. Marchena Arraut's notes, the ALJ was not required to make an alternative finding. *See Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001) ("[T]he responsibility for weighing

conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ.").

Dr. Luis Gonzalez treated Torres from June 2017 to April 2018. Tr. 265–74. During that time, Torres appeared groomed, alert, and cooperative. Tr. 267, 269, 271, 273. Additionally, he presented logical, coherent, relevant, and oriented thoughts. *Id.* He had adequate affect, insight, judgment, and appetite and did not present a suicide or homicide risk. *Id.* He did however appear depressed and anxious throughout this period. *Id.* Dr. Gonzalez's opinions thus support the ALJ's findings regarding the Paragraph B criteria.

Dr. Caroline Toro treated Torres twice in August 2018. Tr. 275–87. On August 3, she diagnosed Torres with schizoaffective disorder, bipolar type but found him to have intermediate memory, adequate thought content, relevant, coherent, and logical thought processes, and adequate insight. Tr. 281, 800. At a follow-up appointment on August 31 she found Torres to have good hygiene, adequate conduct, and relevant, coherent, and logical thoughts. Tr. 275. Further, Torres was oriented to person time and place, had intermediate memory, clear speech, and adequate judgment. *Id.* However, Dr. Toro found Torres had a dulled affect which corresponded with his complaint that he felt sedated. Tr. 275. Likewise, Dr. Toro's findings support the ALJ's conclusion regarding the Paragraph B criteria.

The relevant question here is not whether the ALJ could have found marked or extreme limitations in the Paragraph B areas, but whether the ALJ's finding that Torres had moderate limitations in three areas and mild limitations in one area is supported by substantial evidence. *Evangelista*, 826 F.2d at 144 (quoting *Rodriguez Pagan v. Secr'y of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)) ("'[E]ven if the record arguably could justify a different conclusion,'" the court must affirm "'so long as [the Commissioner's decision] is supported by substantial

evidence.'"). Here, Dr. Gonzalez and Dr. Toro's opinions, along with other portions of the record, provide substantial evidence in support of the ALJ's Paragraph B conclusions. Admittedly, the ALJ's determination relies partly on findings of non-examining state agency physicians. However, where, as here, those findings are detailed and supported by other portions of the record, they provide substantial evidence in support of the Commissioner's decision. *See Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F. 2d 427, 431 (1st Cir. 1991) (affirming a non-treating doctor's medical opinion as substantial evidence); *Agron–Bonilla v. Comm'r. of Soc. Sec.*, Civil No. 08-2111 (DRD)(JA) 2009 WL 4670538, at *5 (D.P.R. 2009) (affirming ALJ denial of benefits that relied on opinions of non-treating state agency physicians). Thus, substantial evidence supports the ALJ's determination that Torres's mental impairment does not meet or equal Paragraph B in Listings 12.03 and 12.04.

To satisfy the Paragraph C criteria of Listings 12.03 and 12.04, a claimant must demonstrate. his mental disorder is "serious and persistent." 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.03, 12.04. To do so, he must have a medically documented history of the existence of the disorder over a period of at least 2 years, including evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.* The ALJ's Paragraph C analysis amounts to one sentence stating, " In this case, the evidence fails to establish the presence of the "Paragraph C" criteria. Tr. 25. Listings 12.03 and 12.04 each require that either both Paragraph A and Paragraph B *or* Paragraph A and Paragraph C criteria are satisfied. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The requirements of 12.03 and 12.04 could therefore be met even if Paragraph B's criteria are not. As a result, it is essential that the ALJ

analyze Paragraph C criteria when considering 12.03 and 12.04. Therefore, the ALJ's findings regarding these two listings are not sufficiently supported. *See Lopez-Rivera v. Comm'r of Soc. Sec.*, 2022 WL 160670 at *11 (D.P.R. Jan. 18, 2022) (remanding ALJ's Listing 12.04 determination for failure to analyze Paragraphs A and C).

Furthermore, the record indicates that Torres may satisfy the Paragraph C criteria. His mental health treatment records begin with a hospitalization in 1999. Tr. 652. He has been hospitalized for mental health treatment on two additional occasions. Tr. 171, 679, 804–10. He obtained mental health treatment throughout 2016, 2017, and 2018. Tr. 189–214, 265–287, 703–28, 804–10. Though the majority of Torres's treatment has taken place in less-structured, outpatient care, his multiple hospitalizations suggest that such care might be ineffective. Further, the most recent hospitalization release documents suggest that Torres does benefit from the more highly structured treatment available in a hospital. Tr. 804–810. After his first hospitalization, Torres was told to simplify his daily routine, suggesting that he may have trouble adapting to changes. Tr. 143. Additionally, evidence suggests that doctors at Hospital Pavia Hato Rey believed that his working conditions exacerbated his mental health problems. Tr. 168, 680. Further, it is worth noting that the episode that led to Torres's 2016 hospitalization, which precipitated his filing of this claim, occurred *at work*. Tr. 49, 804–10. Nevertheless, the ALJ may ultimately find that the Paragraph C criteria is not satisfied. However, upon remand, the ALJ must explain those findings.

### Step Four

Next, Torres argues that the ALJ erred in finding that he has the RFC to perform light work. According to Torres, the record is devoid of any medical evidence to support the ALJ's physical RFC finding. Dkt. 1 at 3. Instead, he maintains that progress notes and medical reports show evidence of manic episodes, sleeping problems, sadness, anhedonia, nervousness, and problems

thinking. These symptoms, Torres argues, have been reported on a sustained basis with increased anxiety, nervousness, and irritability, which has significantly affected his ability to perform any job. *Id.*

RFC is the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* The ALJ must weigh all the evidence and make certain that his or her conclusion rests upon clinical examinations as well as medical opinions. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 28, 224 (1st Cir. 1981). However, the claimant is responsible for providing the evidence of an impairment and its severity; and the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982) (*citing Richardson v. Perales*, 402 U.S. 389 (1971)).

The ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: is able to perform simple, routine tasks but not at production rate pace (e.g. assembly line work). His use of judgment is limited to simple work related decisions. He can interact with supervisors frequently, coworkers occasionally and never with the public. He can tolerate occasional changes in the work setting.

Tr. 25. In arriving at this conclusion, the ALJ gave significant weight to the evidence from Dr. Irizarry Rivera and the state agency consultants, Drs. Roman Rivera and Calderon. Tr. 27. On the other hand, she found Torres's testimony to be "less than consistent." Tr. 28.

Dr. Roman Rivera evaluated Torres twice in November 2016. Tr. 296–308. Initially, he determined Torres had a moderate condition but requested additional information about Torres's

hospitalizations. Tr. 301. At a follow up appointment, Dr. Roman Rivera found Torres to be depressed, but still able to perform a two-step simple command, persist at tasks for two-hour intervals, interact with others, and adjust to changes. Tr. 303. He determined that Torres could perform heavy or very heavy physical work. Tr. 307. He further found Torres to be moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance. Tr. 304. Dr. Roman Rivera's findings thus support the ALJ's conclusions regarding Torres's RFC.

On March 23, 2017 Dr. Calderon conducted a reconsideration of Dr. Roman Rivera's evaluation. Tr. 310–23. She found no changes in Torres's condition since Dr. Roman Rivera's evaluation and affirmed Dr. Roman Rivera's findings. Tr 315. Therefore, Dr. Calderon's findings also support the ALJ's determination regarding Torres's RFC.

The ALJ evaluated Torres's credibility by looking for inconsistencies within his testimony and conflicts between Torres's testimony and the medical records. Tr. 27–28. At his hearing before the ALJ, Torres testified that he stopped working due to his health condition. Tr. 50. However, later in the testimony, he stated that he stopped working in order to care for his mom. Tr. 57–58. The ALJ further found that no medical evaluation had ever determined that Torres could not work due to his illness and this finding is supported by the record. Tr. 28. The evidence thus supports the ALJ's finding that Torres's testimony was inconsistent and that Torres could work despite his impairments.

To summarize, the ALJ considered treatment records, the consultative examinations, Torres's testimony, and consistent with her duties, determined issues of credibility, drew inferences from the record evidence, and resolved conflicts in the evidence. *Evangelista*, 826 F.2d at 141.

After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding.

**Step Five**

Finally, Torres argues that the ALJ erred by finding that there were jobs in significant numbers in the national economy that he could perform. Torres asserts he is unable to perform the occupations listed by the VE because those occupations have similar non-exertional limitations to the past relevant work that the VE concluded he was unable to perform. Dkt. 1 at 5; Dkt. 27 at 3–4. The Commissioner argues that this contention is erroneous and contradicted by relevant case law, regulations, and the VE's testimony. Dkt. 32 at 6. However, the Commissioner does not cite any case law or regulations supporting this contention. Instead, the Commissioner argues the ALJ provided a highly detailed RFC, presented comprehensive questions to the VE, and then properly weighed the VE's testimony to determine that alternative jobs in the national economy. *Id.* at 6–8.

Where, as here, an ALJ reaches Step Five of the sequential evaluation process, the burden of proof shifts to the Commissioner to show that a claimant can perform work other than her past relevant work. *Ortiz*, 890 F.2d at 524. When determining which work-related limitations to include in the hypothetical question, the ALJ must: (1) weigh the credibility of a claimant's subjective complaints, and (2) determine what weight to assign the medical opinions and assessment of record. *See* 20 C.F.R. §§ 404.1527, 404.1529. Social Security Regulations address cases similar to this one. Specifically, they state "[s]omeone who is closely approaching retirement age, has a limited education or less, worked for 30 years in a cafeteria doing an unskilled job as a 'server,' almost constantly dealing with the public, and now cannot, because of a severe mental impairment, frequently deal with the public" should be found disabled in light of the narrowed vocational opportunity in conjunction with their age, education, lack of skills, and long commitment to the particular type of work. SSR 85-15. "However, the decision would not necessarily be the same for a younger, better-educated, or skilled person." SSR 85-15.

As discussed, the ALJ weighed Torres's credibility and assigned weight to the medical experts' determinations. Based on the VE's conclusion that Torres could not perform any of his past relevant work, the ALJ concluded the same. Tr. 28. The ALJ found Torres, then 58 years old, to be of advanced age and unable to communicate in English. *Id.* Torres testified that he completed high school and three years of an electrician trade school program, but never used this training on the job. Tr. 43–44. The ALJ found that Torres worked in cafeterias for 15 years. Tr. 28. Because Torres's previous work was unskilled, the ALJ determined that transferability of skills was not an issue. Tr. 29. Though the VE found Torres could not interact with the public, he based this determination on Torres's language ability, not his mental impairment. Tr. 70.

The ALJ asked the VE to consider what jobs Torres could perform given his age, education, language ability, physical capabilities, and the mental limitations outlined in the RFC. Tr. 69–70. The VE concluded that Torres could not perform any of his prior jobs based on his limitations, but that he could work as a Linen Room Attendant, Warehouse Worker, Chainsaw Operator, Laborer-Brush Cleaning, or Process Helper. Tr. 70–72. Torres's attorney then proposed more stringent hypothetical limitations than those adopted by the ALJ and the VE stated that a person with such limitations could not perform any job in the national economy. Tr. 72–73. As discussed, the ALJ's RFC determination is supported by substantial evidence. Because the ALJ confirmed that the VE's determination was consistent with the Department of Occupational Tables, the ALJ properly relied on the VE's determination that someone with those limitations could perform the five alternative jobs listed by the VE. Tr. 29, 72; SSR-00-04. As such, the ALJ's determination regarding alternative jobs in the national economy is supported by substantial evidence. Having reviewed the record as well as parties' briefs, I find no Step Five error that would merit reversal or remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September 2022.

S/ *Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge